# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>MAX HASSAN,<br><br>        Defendant. | 1:07cv0938 AWI DLB<br><br>FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Document 17) |

Plaintiff Microsoft Corporation ("Microsoft") filed the instant motion for default judgment on January 22, 2008. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302. On February 22, 2008, the matter came on for hearing before the Honorable Dennis L. Beck, United States Magistrate Judge. Jennifer Chiarelli appeared for Microsoft and Defendant Max Hassan d/b/a Bakersfield Computer Specialist ("Defendant") did not appear. The matter was continued to March 28, 2008. Jennifer Chiarelli appeared again for Microsoft. Defendant did not appear.

## BACKGROUND

Plaintiff filed this copyright and trademark infringement action against Defendant on June 27, 2007. The action arises from Defendant's alleged distribution of counterfeit and infringing Microsoft software and components. Microsoft alleges causes of action for (1) Copyright Infringement; (2) Federal Trademark Infringement; (3) False Designation of Origin, False

1

Description and False Representation; (4) Common Law Unfair Competition; (5) Imposition of a Constructive Trust; and (6) Accounting.

According to the complaint, in or about February 2005, Defendant distributed to an investigator counterfeit and infringing Windows XP Pro and Office XP Pro with FrontPage 2002 software components.  By letter dated March 29, 2005, Microsoft notified Defendant that he had distributed counterfeit Microsoft products and that such conduct constitutes an infringement of Microsoft's intellectual property rights.  Microsoft further demanded that Defendant cease and desist the conduct.  In or about March 2007, Defendant distributed to an investigator computer systems with infringing Office XP Pro software and Office XP Pro with FrontPage 2002 software.  Microsoft alleges that Defendant's conduct includes the advertising, marketing, installing and/or distribution of "infringing materials," specifically reproductions, copies or colorable imitations of Microsoft copyrighted software and/or the Microsoft trademarks, logos, and service marks.  Microsoft further alleges that Defendant is continuing to commit these acts. Microsoft requests damages, the imposition of a constructive trust, injunctive relief and attorneys' fees and costs.

According to the proof of service filed with the Court on July 20, 2007, Defendant was served with the complaint on July 11, 2007, after twelve failed attempts.  In the "Declaration of Diligence" filed on March 21, 2008, process server Debbie Hart explained she first tried to serve the complaint on June 29, 2007, at 4:45 p.m, at 5403 Moraga Ct, Bakersfield, CA, 93308.[1]  A minor female answered the door and indicated that Defendant did not live at the residence, although she did not appear to be telling the truth.  The same female answered the door again on June 30, 2007, and again denied that Defendant lived there.  Attempts were made on July 1 and 2, 2007, but there was no answer.  On July 3, 2007, minor children answered the door and indicated that Defendant was not home, but that he lived there.  On July 4, 2007, there was no answer.  On July 5, 2007, the same minor female answered the door but stated that Defendant did not live there but stayed there sometimes.  Service was again attempted on July 6, 7, 8, 9 and 10,

---

[1] This is the address that Defendant provided as the address to which the investigator should mail payments for his April 2007, order, discussed below.

2

but no one answered the door. On July 11, 2007, an adult answered the door. According to the Proof of Service, the documents were served personally on John Doe (a male occupant of the residence, 65 years old, 6'0", 190 pounds, glasses, who refused to give his name). The documents were subserved and mailed.

On September 4, 2007, pursuant to Microsoft's request, the Clerk of Court entered default against Defendant.

On January 22, 2008, Microsoft filed the instant motion for default judgment. Microsoft seeks the following:

1. Statutory damages in the total amount of $940,000;

2. Permanent injunctive relief;

3. Attorneys' fees in the amount of $4,987.35; and

4. Costs in the amount of $882.50.

The Court held a hearing on February 22, 2008. The hearing was continued to March 28, 2008, to allow Plaintiff time to file a supplemental declaration regarding service and the nature of Defendant's business.

## **LEGAL STANDARD**

Microsoft moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides that judgment may be entered:

> (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

"Upon default, the well pleaded allegations of the complaint relating to liability are taken as true." Dundee Cement Co. v. Highway Pipe and Concrete Products, 722 F.2d 1319, 1323 (7th

Cir. 1983); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, Moore's Federal Practice §55.11 (3d ed. 2000).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

Defendant was served with the complaint on July 11, 2007. Defendant is not an infant or incompetent person, and is not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. Declaration of Jennifer N. Chiarelli ("Chiarelli Dec."), ¶ 5.

## ANALYSIS

A.     Statutory Damages

Unable to collect actual damages, Microsoft requests statutory damages under both the Copyright Act and Lanham Act. 15 U.S.C. § 1117(c), 1125(c) and 504(c)(1) & (c)(2). The Copyright Act authorizes statutory damages of up to $30,000 per copyright infringement or enhanced damages up to $150,000 per copyright if the infringement is willful. 17 U.S.C. § 504(c). Similarly, statutory damages for trademark infringement are available for up to $100,000 per counterfeit trademark infringed, regardless of willfulness, and enhanced damages up to $1,000,000 per mark if the infringement is willful. The Court has wide discretion to determine the amount of statutory damages to be awarded, Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990), and can award statutory damages under both the Lanham Act and Copyright Act even where the infringement was caused by a single act. Nintendo of America, Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994).

1    Here, Microsoft believes that Defendant's conduct was willful, based on his failure to
2 defend and his failure to stop the infringement after the March 2005 letter. Exhibit A, attached to
3 Declaration of Lisa Blinzler. However, Microsoft requests the maximum amount of statutory
4 damages available for *non*-willful infringement. It seeks $100,000 for each of its seven
5 trademarks and service marks at issue and $30,000 for each of its eight copyrights at issue, for a
6 total of $940,000.[2]

7    On March 21, 2008, Microsoft submitted the declarations of Rob Teeter and Danny
8 Ward, of National Trademark Investigations ("NTI"), a private investigatory agency.

9    According to Danny Ward's declaration, he called Bakersfield Computer Specialist on
10 February 4, 2005, and spoke with a man named Max. Declaration of Danny Ward ("Ward
11 Dec."), ¶ 2. Max offered to sell one burned copy of Microsoft Windows XP Professional and
12 one burned copy of Microsoft Office 2003 Professional. Ward placed an order for the software
13 and submitted payment in the amount of $95 through PayPal. Ward Dec., ¶ 2. On February 11,
14 2005, Ward received a package from Max containing a recordable CD onto which "Windows XP
15 SP2" was handwritten. The CD was in a sleeve with product key JD3T2-QH36R-X7W2W-
16 7R3XT-DVRTQ handwritten on the back. The package also contained a second recordable CD
17 onto which "Microsoft Office 2002 XP" was handwritten. The CD was in a sleeve with product
18 key FM9FY-TMF7Q-KCKCT-V9T29-TBBBG handwritten on the back. Ward Dec., ¶ 4, Exh.
19 C.

20    On March 25, 2007, Rob Teeter called Bakersfield Computer Specialist and spoke with
21 Max. He placed an order for two new computer systems with Microsoft Windows XP
22 Professional and Microsoft Office XP Professional installed on both systems. Declaration of
23 Rob Teeter ("Teeter Dec."), ¶ 2. A copy of the quote is attached as Exhibit A. Max instructed
24 him to mail a deposit in the amount of $700 to 5400-5498 Moraga Ct., Bakersfield, CA, 93308-

---

[2] The eight trademarks at issue are for Windows XP Professional, Office XP Professional, Access 2002, Excel 2002, Outlook 2002, PowerPoint 2002, Word 2002, and FrontPage 2002. The trademarks and service marks involved are "Microsoft," "Windows," "Colored Flag Design," "PowerPoint," "Microsoft Access," "Outlook," and "Puzzle Piece Logo." The word "Microsoft" is registered under two different classifications of goods and Microsoft seeks damages only once for these marks. For purpose of calculating damages, Microsoft seeks damages "per counterfeit mark."

4088. Teeter mailed the money on March 27. Teeter Dec., ¶ 3. Shortly thereafter, Max requested that Teeter send another $700 to 5403 Moraga Court, Bakersfield, CA, 93308-4089. He mailed payment on April 6, 2007, and mailed the remaining amount due on April 17, 2007. Teeter Dec., ¶¶ 4-5. On April 13, 2007, Teeter received a package containing one of the systems he ordered and one unit of purported Microsoft Windows XP Software. The package also contained a business card for Max Hassan of Bakersfield Computer. It did not contain a CD-ROM, End User License Agreement, Certificate of Authenticity, or instruction manual. Teeter Dec., ¶ 7. On April 16, 2007, Teeter received a package that contained the second system, as well as one unit of purported Microsoft Windows XP software and a recordable CD onto which "Backup" was handwritten. Teeter Dec., ¶ 8, Exh. E. The package did not include a CD-ROM, End User License Agreement, Certificate of Authenticity, or instruction manual. Teeter Dec., ¶ 8. Teeter turned on the computers and saw screen displays showing that Microsoft Office XP was installed on both systems. He downloaded the file directories of the computer systems onto recordable CDs. Teeter Dec., ¶ 9.

Microsoft also submitted the declaration of Sue Ventura, a Microsoft employee who identifies and analyzes infringing and counterfeit software. She examined the materials received from NIT in February 2005 and determined that they were counterfeit. Declaration of Sue Ventura ("Ventura Dec."), ¶¶ 3-5. She also reviewed the materials received from NTI in April 2007, and determined that they were counterfeit, as well. Ventura Dec., ¶¶ 6-9. Ventura further determined that the Office XP software copied onto the two computer systems in April 2007 had the same product key (FM9FY-TMF7Q-KCKCT-V9T29-TBBBG) as the Office XP software obtained in February 2005. Ventura Dec., ¶ 12.

Having read and considered the declarations, pleadings and exhibits to the present motion, the Court finds that the requested damages is reasonable and within the range of awards for damages in factually similar cases. See eg. Microsoft v. McGee, 490 F.Supp.2d 874 (S.D.Ohio 2007). The Court therefore recommends statutory damages in the total amount of $470,000 ($50,000 for each of its seven trademarks and service marks at issue and $15,000 for each of its eight copyrights at issue).

B.      Injunctive Relief

Microsoft also requests that this Court issue a permanent injunction based on the likelihood that Defendant will continue with his infringement.  17 U.S.C. § 502(a).  The Court finds this request to be reasonable.

C.      Attorneys' Fees and Costs

Finally, Microsoft requests that this Court award attorneys' fees and costs in the total amount of $5,869.85 ($4,987.35 in attorneys's fees and $882.50 in costs), pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a).  Microsoft is entitled to such relief.

**RECOMMENDATION**

For the reasons discussed above, the Court RECOMMENDS that:

1. Microsoft's motion for default judgment in favor of Microsoft and against Defendant be GRANTED;
2. Microsoft be AWARDED statutory damages in the total amount of $470,000;
3. Microsoft be GRANTED injunctive relief in the form of a permanent injunction;
4. Microsoft be AWARDED reasonable attorneys' fees in the amount of $4,987.35; and
4. Microsoft be AWARDED costs in the amount of $882.50.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The Court will

then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **April 1, 2008**          /s/ **Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE